ROBERT BORNEFIELD V. A. WETTERMARK.

No. 165.

1. **Guaranty of Cotton Weights.**—Appellee, who had advanced $20,000 on cotton and received drafts with bill of lading and weight certificates attached, drawn by the borrower, who was the consignor, upon the consignee; was wired to the effect that he must guarantee weights before the draft would be paid; whereupon he wired, "We guarantee weights of Nagle 450 bales of cotton." *Held*, a guarantee only of weight, and not of the quality of the cotton.

2. **Custom to Vary Contract.**—One hundred and thirty-nine bales of the cotton when it arrived at Houston had been wet for sometime. After being picked and the damaged cotton separated from the good, the weight of the good cotton was found to be 10,086 pounds short. A custom sworn to by two witnesses, but of which appellee knew nothing, giving to such a guaranty the meaning that it was a guaranty of that weight of good, merchantable cotton, is not shown and will not be enforced.

3. **Same.**—Whatever might be the effect of a general custom of the kind among cotton dealers, the evidence of its existence in this case is not conclusively shown. The reason why the law presumes that contracts are made in accordance with such a usage is, that it is so general that all are supposed to know of and contract with reference to it.

APPEAL from Nacogdoches. Tried below before Hon. JAMES I. PERKINS.

*Ratcliff & Ingraham* and *Robert G. Street*, for appellant. — When the judgment is contrary to the weight of the evidence, the judgment should be set aside. 58 Texas, 275; 61 Texas, 286; 70 Texas, 64; 15 Texas, 50;. 17 Texas, 220; 15 Texas, 363; 62 Texas, 417; 22 Texas, 41; 59 Texas, 71;. 63 Texas, 427; 1 W. & W. C. C., secs. 968, 1155.

*Jennings, Lewis & Matthews* and *E. C. Branch*, for appellee.—A custom to be binding must be general and long acquiesced in, and must be known to the parties contracting, or so general and universal in its scope that parties contracting would be bound to take notice of it. 3 Willson's. C. C., sec. 130; 6 Wait's Act. and Def., 621, 624; 2 Pars. on Con., 501, 509, 535, 541, 543, 544.

WILLIAMS, ASSOCIATE JUSTICE.—Appellant purchased from N. J. Nagle, a cotton buyer, four hundred and fifty bales of cotton, of a stipulated grade, to be delivered free on board cars at Nacogdoches, after being classed by Bornefield's agent, Nagle guaranteeing the weights.

Nagle did not have the cotton on hand at the time the contract was made, but he afterwards purchased and collected it at Nacogdoches and Timson, had it graded by appellant's classer, who went up for that purpose, and delivered it on board cars at Nacogdoches, consigned to appel--

lant at Houston.   Before shipping it he had caused it to be weighed by local weighers, and when he had obtained bills of lading from the railroad company, he drew a draft in favor of appellees upon appellant for the full price of the cotton, according to the local weights, amounting to $20,034.31.   This draft, with the bills of lading and weigher's certificates attached, was sent down to Houston for collection.   Appellant declined to pay it, wiring Nagle, " Will honor draft provided Wettermark guarantees weight difference, if any; let him wire me to that effect." Nagle went down to Galveston to see appellant, and a conversation occurred between them, in their versions of which there are some discrepancies, but as the result of which Nagle agreed to send, and did send, to appellees at Nacogdoches, the following dispatch:   " Will have to wire party guaranteeing weights; wire immediately."   The cashier of the bank at Galveston to whom appellees had sent the draft on appellant also wired appellees that payment was refused, " Party claims rebate, as private drawer was telegraphed."

Appellees knew nothing of the terms of the contract between appellant and Nagle, but having advanced to the latter about $20,000 on the cotton to enable him to pay for it, they wired appellant, " We guarantee weights Nagle 450 bales of cotton."   Upon receipt of this appellant paid the draft.

When the cotton arrived at Houston, it was found that 139 bales had been wet for sometime, and the cotton on the outside of these bales was thereby damaged, and the damage was extending into the bale and injuring the good cotton.   In accordance with the usual custom and practice in such cases, these damaged bales were picked, the damaged cotton being carefully separated from the good, which was then rebaled, and the damaged part sold as pickings.   The weight of the damaged and of the good cotton together exceeded the weight of these bales as given at point of shipment, but the weight of the good merchantable cotton was less than those weights by 10,086 pounds.

After deducting from this loss the net proceeds of the damaged cotton, appellant sustained a loss of $542.24, and brought this suit against appellees, upon their guaranty, to recover the same.

The court below decided that appellees were not liable for the loss thus stated.

From this statement it is apparent that the loss, which appellees' guaranty is claimed to cover, resulted from damage to the quality of the cotton, and not from difference in its weight at Nacogdoches and at Houston.   The plain and natural import of the terms of the guaranty do not include a loss from such a cause.   There is, by such interpretation, but one fact guaranteed, and that is, that the weights at Houston shall equal those upon which the payment was made.   We are not now considering Nagle's contract with appellant, nor his liability.   Appellees did not

guarantee the fulfillment of that contract in all particulars, but only in one.  This being the ordinary meaning and effect of the language used in the guaranty, appellant contends, first, that the dealings leading up to and surrounding the making of it disclose the intention of the parties to have been, that the weight guaranteed was that of good merchantable cotton; and second, that such intention is further shown by the existence of a custom of trade, giving to a guarantee of weights the meaning contended for.

The transactions are already stated.  From them a meaning rather the opposite of that which appellant seeks to fix upon the instrument seems to appear.  As before shown, his construction would give to it the effect of guaranteeing the quality of the cotton, as well as its weight.  Neither the language nor the conduct of the parties imports any such purpose or understanding.  This is further indicated by the testimony of Nagle, whom the court below had the right to believe, that appellant gave as his only reason for wanting the guarantee, that Nacogdoches had a reputation for short weights.

As to the custom, there is in the record the testimony of two witnesses to the existence of such a usage as is above stated.  There is also the testimony of one of the appellees that he knew of no custom of the sort.  The evidence of Nagle tends in the same direction.

Whatever might be the effect upon this contract of a general custom of the kind among cotton dealers, it can not be said that the evidence of its existence was so conclusive that the court below was bound to find that it did exist.  The fact that men engaged in business have no knowledge of a custom is evidence that it does not exist; for the very reason why the law presumes that contracts are made in accordance with such a usage is, that it is so general that all are supposed to know of and contract with reference to it.  The judgment of the court below will be affirmed.

*Affirmed.*

Delivered May 11, 1893.